UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CHRISTY JACKSON,

    Plaintiff,

v.                                        Hon. Sally J. Berens

COMMISSIONER OF SOCIAL SECURITY,        Case No. 1:20-cv-440

    Defendant.
_____/

**OPINION**

This is an action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to review a final decision of the Commissioner of Social Security denying Plaintiff's claim for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) under Titles II and XVI of the Social Security Act. The parties have agreed to proceed in this Court for all further proceedings, including an order of final judgment.

Section 405(g) limits the Court to a review of the administrative record and provides that if the Commissioner's decision is supported by substantial evidence and in accordance with the law it shall be conclusive. The Commissioner has found that Plaintiff is not disabled within the meaning of the Act. Plaintiff seeks judicial review of this decision.

For the following reasons, the Court will **vacate and remand the matter for further factual findings pursuant to sentence four of 42 U.S.C. § 405(g)**.

**STANDARD OF REVIEW**

The Court's jurisdiction is confined to a review of the Commissioner's decision and of the record made in the administrative hearing process. *See Willbanks v. Sec'y of Health & Human Servs.*, 847 F.2d 301, 303 (6th Cir. 1988). The scope of judicial review in a social

security case is limited to determining whether the Commissioner applied the proper legal standards in making his decision and whether there exists in the record substantial evidence supporting that decision. *See Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989). The Court may not conduct a de novo review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and his findings are conclusive provided they are supported by substantial evidence. *See* 42 U.S.C. § 405(g).

Substantial evidence is more than a scintilla, but less than a preponderance. *See Cohen v. Sec'y of Dept. of Health & Human Servs.*, 964 F.2d 524, 528 (6th Cir. 1992). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health & Human Servs.*, 735 F.2d 962, 963 (6th Cir. 1984). As has been widely recognized, the substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way without judicial interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986). This standard affords to the administrative decision maker considerable latitude and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

## PROCEDURAL POSTURE

Plaintiff previously filed an application for DIB on June 14, 2013. She alleged that she had been disabled since May 25, 2013, her amended alleged onset date. Plaintiff was previously

2

employed as a fast-food worker, assistant manager, and manager. After her application was denied, Plaintiff requested a hearing before an Administrative Law Judge (ALJ). On March 24, 2015, ALJ David S. Pang found that Plaintiff had not been disabled from May 25, 2013, through the date of the date of his decision. (PageID.122–34.) Plaintiff eventually appealed the decision to this Court, and on December 1, 2015, Judge Maloney issued an Opinion and Judgment affirming ALJ Pang's decision. *Jackson v. Comm'r of Soc. Sec.*, No. 1:16-cv-236, 2016 WL 7009784 (W.D. Mich. Dec. 1, 2016).

Plaintiff filed her instant applications for DIB and SSI on November 16, 2016, alleging that she became disabled on March 25, 2015.[1] After Plaintiff's applications were denied, (PageID.177, 178), she requested a hearing before an ALJ. On January 7, 2019, ALJ Regina Sobrino held a hearing, at which Plaintiff and Pauline A. Mceachin, an impartial vocational expert, testified. Plaintiff was represented by her counsel of record in the instant appeal. (PageID.90–117.) On April 10, 2019, ALJ Sobrino issued a partially favorable decision finding Plaintiff disabled from September 1, 2015, through March 6, 2017, but not disabled prior to September 1, 2015, or after March 6, 2017. (PageID.57–81.)

The Appeals Council denied Plaintiff's request for review on March 14, 2020. (PageID.45–47.) Therefore, ALJ Sobrino's ruling became the Commissioner's final decision. *See Cook v. Comm'r of Soc. Sec.*, 480 F.3d 432,434 (6th Cir. 2007).

Plaintiff initiated this civil action for judicial review on May 18, 2020.

---

[1] March 25, 2015 was Plaintiff's amended onset date, the day after ALJ Pang's unfavorable decision.

**ANALYSIS OF THE ALJ'S DECISION**

The social security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f).[2] If the Commissioner can make a dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The regulations also provide that, if a claimant suffers from a nonexertional impairment as well as an exertional impairment, both are considered in determining his residual functional capacity (RFC). *See* 20 C.F.R. §§ 404.1545, 416.945.

The burden of establishing the right to benefits rests squarely on Plaintiff's shoulders, and she can satisfy her burden by demonstrating that her impairments are so severe that she is unable to perform her previous work and cannot, considering her age, education, and work experience, perform any other substantial gainful employment existing in significant numbers in the national economy. *See* 42 U.S.C. § 423(d)(2)(A); *Cohen*, 964 F.2d at 528. While the burden of proof shifts to the Commissioner at step five, Plaintiff bears the burden of proof through step four of

---

[2] 1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. §§ 404.1520(b), 416.920(b));

2. An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. §§ 404.1520(c), 416.920(c));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors (20 C.F.R. §§ 404.1520(d), 416.920(d));

4. If an individual is capable of performing his past relevant work, a finding of "not disabled" must be made (20 C.F.R. §§ 404.1520(e), 416.920(e));

5. If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. §§ 404.1520(f), 416.920(f)).

the procedure, the point at which her RFC is determined. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997).

After finding that Plaintiff had not engaged in substantial gainful activity since her amended alleged onset date of March 25, 2015, the ALJ found that Plaintiff suffered from the following severe impairments: (1) degenerative disc disease; (2) scoliosis; (3) degenerative joint disease with chondromalacia of the right knee; (4) carpal tunnel syndrome; (5) chronic obstructive pulmonary disease; (6) migraine headache disorder; (7) hypertension; (8) obstructive sleep apnea; (9) obesity; (10) affective disorder; and (11) post-traumatic stress disorder. (PageID.61–62.) In addition, for the period of September 1, 2015, through March 6, 2017, the ALJ found that Plaintiff suffered from prolonged grief reaction. (PageID.62.)

At step three, the ALJ determined that Plaintiff does not have an impairment or combination of impairments that meets or medically equals any impairment identified in the Listing of Impairments detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1. (PageID.62, 68–70.) The ALJ determined that Plaintiff retained the capacity to perform a reduced range of light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), but that for the period of September 1, 2015, through March 6, 2017, she would be off task more than 20 percent of a typical workday due to prolonged grief reaction resulting from the death of her son in late August 2015. Because this limitation precluded all jobs, the ALJ found Plaintiff disabled for that period. (PageID.62–66.) The ALJ further determined that, as of March 7, 2017, Plaintiff's disability ended due to medical improvement, resulting in an increase in Plaintiff's RFC. (PageID.70–71.) The ALJ thus determined that prior to September 1, 2015, and since March 7, 2017, Plaintiff retained the RFC to perform light work, subject to the following limitations:

> the opportunity to sit or stand while working, provided changing positions does not result in being off task more than 10% of the work period; no climbing of

>  ladders, ropes, or scaffolds; and occasional climbing of stairs, stooping, balancing, kneeling, crouching, and crawling. The claimant is limited to frequent handling, fingering, feeling, reaching, pushing and pulling with the bilateral upper extremities; no work around hazards such as at unprotected heights or around dangerous moving machinery; no exposure to vibration; no concentrated exposure to respiratory irritants; simple, routine, repetitive, unskilled work with a specific vocational preparation (SVP) of 1 or 2 as defined in the Dictionary of Occupational Titles (DOT), with no fast-paced production requirements (e.g., no assembly line work); no work that requires interaction with the public; no work in tandem with co-workers; and supervision of the kind that is typical for simple, routine, unskilled work.

(PageID.71.)

At step four, the ALJ determined that Plaintiff could not perform any of her past relevant work. (PageID.79.) At step five, however, based on testimony from the vocational expert, the ALJ found that an individual of Plaintiff's age, education, work experience, and RFC could perform the occupations of inspector, bench assembler, and hand packager, 110,000 of which existed in the national economy. (PageID.79–80.) This represents a significant number of jobs. *See, e.g., Taskila v. Comm'r of Soc. Sec.*, 819 F.3d 902, 905 (6th Cir. 2016) ("[s]ix thousand jobs in the United States fits comfortably within what this court and others have deemed 'significant'").

## DISCUSSION

Plaintiff raises two arguments in her appeal: (1) the ALJ failed to properly evaluate the opinions of Plaintiff's treating physicians; and (2) the RFC finding is not based on substantial evidence because it does not include all of Plaintiff's established limitations.[3] (ECF No. 17 at PageID.1499.)

---

[3] Plaintiff includes a third issue—that the ALJ's errors regarding her RFC finding resulted in the ALJ not propounding a valid hypothetical to the vocational expert. The Court will not address the issue, however, as Plaintiff fails to properly develop it.

I.   **Medical Opinion Evidence**

The treating physician doctrine recognizes that medical professionals who have a long history of caring for a claimant and her maladies generally possess significant insight into her medical condition. *See Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994). An ALJ must, therefore, give controlling weight to the opinion of a treating source if: (1) the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques," and (2) the opinion "is not inconsistent with the other substantial evidence in [the] case record." *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 375-76 (6th Cir. 2013) (quoting 20 C.F.R. § 404.1527). That deference is appropriate, however, only where the opinion "is based upon sufficient medical data." *Miller v. Sec'y of Health & Human Servs.*, 1991 WL 229979, at *2 (6th Cir. Nov. 7, 1991) (citation omitted). The ALJ may reject the opinion of a treating physician where it is unsupported by the medical record, merely states a conclusion, or is contradicted by substantial medical evidence. *See Cohen*, 964 F.2d at 528; *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286-87 (6th Cir. 1994).

If an ALJ accords less than controlling weight to a treating source's opinion, the ALJ must give "good reasons" for doing so. *Gayheart*, 710 F.3d at 376. Those reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Id.* This requirement "ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule." *Id.* (citation omitted). Simply stating that the physician's opinions "are not well-supported by any objective findings and are inconsistent with other credible evidence" is, without more, too "ambiguous" to permit meaningful review of the ALJ's assessment. *Id.* at 376-77.

7

If the ALJ affords less than controlling weight to a treating physician's opinion, the ALJ must still determine the weight it should be afforded. *Id.* at 376. In doing so, the ALJ must consider the following factors: (1) length of the treatment relationship and frequency of the examination, (2) nature and extent of the treatment relationship, (3) supportability of the opinion, (4) consistency of the opinion with the record as a whole, (5) the specialization of the treating source, and (6) other relevant factors. *Id.* (citing 20 C.F.R. § 404.1527). While the ALJ is not required explicitly to discuss each of these factors, the record must nevertheless reflect that the ALJ considered those factors relevant to his assessment. *See, e.g., Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007); *Undheim v. Barnhart*, 214 F. App'x 448, 450 (5th Cir. 2007).

### A. Max Allen, D.O.

Plaintiff contends that the ALJ failed to properly evaluate the opinion of Dr. Allen. On February 10, 2017, Dr. Allen provided a medical examination report in which he opined that, in addition to other limitations, Plaintiff would be limited to occasionally lifting less than ten pounds in an eight-hour workday, could not repetitively push or pull with either upper extremity, and could not perform repetitive simple grasping, reaching, or fine manipulation with her right hand. (PageID.858.) Dr. Allen said that these limitations were based on clinical observations and plans for an MRI of Plaintiff's lower back and EMG studies of Plaintiff's right hand. (PageID.859.)

The ALJ gave Dr. Allen's opinions only limited weight because they were not fully supported by his treatment records. (PageID.78.) The ALJ noted that Plaintiff first saw Dr. Allen on May 13, 2016, and he found that Plaintiff was "[a]lert & oriented x3, well groomed," and noted that she walked without an assistive device. During that visit, Dr. Allen prescribed Norco, which Plaintiff later indicated in November 2016 was "effective for [her] pain management." (PageID.78, 1438, 1479.) The ALJ noted that Dr. Allen did not see Plaintiff again until January

8

11, 2017, when he found that Plaintiff had "1-2/5" strength in "both hands" and "limited rom [in] shoulders and hands." (PageID.1423–24.) The ALJ noted that Plaintiff's next, and apparently last, visit with Dr. Allen was on March 10, 2017, during which Dr. Allen reported findings within normal limits, except for her BMI of 31.84. (PageID.1396.) Apart from Dr. Allen's treatment records, the ALJ also noted that his limitations were at odds with objective medical evidence, including cervical and lumbar spine x-rays, a lumbar spine MRI, and an MRI of Plaintiff's right knee. (PageID.78–79.)

Plaintiff contests the ALJ's assessment of Dr. Allen's opinion only with regard to the limitations on lifting, repetitive pushing and pulling with either upper extremity, and use of her right hand. Plaintiff notes that, even after her carpal tunnel surgery in 2013 and 2014, she had bilateral paresthesias and cramping in both hands and wore a wrist brace on her right hand throughout the day and on both hands at night. (PageID.1088). She further notes that in July 2016, consultative examiner Steven Hardy, D.O., found that she exhibited positive Tinel's sign and decreased grip strength in both hands, indicating underlying entrapment neuropathy in her wrists. (PageID.1090, 1092.) Plaintiff also points out that the March 2017 treatment notes indicate that Plaintiff reported painful throbbing in her right hand and that she was awaiting a surgery consult for carpel tunnel syndrome. (PageID.1395, 1401.) In December 2017, when she received the consult, Plaintiff's surgeon, Jeffrey King, M.D., recommended consultation with physical medicine and a rehabilitation doctor. (PageID.1194.)

The Commissioner argues that the ALJ properly discounted Dr. Allen's opinion and declined to give it controlling weight because "it conflicted with the overall record, including his own treatment notes." (ECF No. 21 at PageID.1531.) The Commissioner cites, for example, the ALJ's observations that Plaintiff was walking without an assistive device at the May 2016 visit

9

and that Dr. Allen's March 2017 clinical examination findings were within normal limits, and Dr. Ndebe's June 2018 examination findings that Plaintiff exhibited no sensory deficits and had normal range of motion, reflexes, coordination, and muscle tone. (*Id.* at PageID.1531–32.) The Commissioner further notes that the ALJ pointed to January 2017 imaging that revealed a normal cervical spine, mild scoliosis, minimal degeneration, and mild foraminal narrowing in the lumbar spine. (*Id.* at PageID.1532.)

To comply with the treating physician rule and the "good reasons" requirement, an ALJ must identify her reasons for discounting the physician's opinion and explain precisely how those reasons affected the weight the ALJ accorded the opinion. *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 242 (6th Cir. 2007); *see also Gayheart*, 710 F.3d at 376–77. The ALJ "must say enough 'to allow the appellate court to trace the path of his reasoning.'" *Stacey v. Comm'r of Soc. Sec.*, 451 F. App'x 517, 519 (6th Cir. 2011) (quoting *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995)). Here, the ALJ said that Dr. Allen's treatment records "do not fully support [his] opinions" (PageID.78), but she did not explain why this was so. The ALJ proceeded to discuss the treatment records for the three occasions on which Dr. Allen examined Plaintiff (May 13, 2016, January 11, 2017, and March 10, 2017) and noted that those were his only treatment records, but she did not illuminate why they were at odds with the limitations pertaining to Plaintiff's use of her right hand and upper extremities. It may be that the ALJ found the opinion not fully supported because January 11, 2017, was the only occasion on which Dr. Allen made positive examination findings relating to these limitations, and the record contains few instances of Plaintiff seeking treatment for her hand and shoulder issues during the relevant period. But this conclusion requires some guesswork. It is true, as the Commissioner notes, that the ALJ bolstered her discussion with citation to objective testing and other examination findings that

undermined some of Dr. Allen's limitations, but it is unclear how that evidence pertains to Plaintiff's shoulder or hand issues. It is easy enough to conclude that x-rays of the spine showing only mild findings and no significant pathology, or an MRI of the right knee are directed at Dr. Allen's limitations as to sitting, standing, and walking, but the connection between that evidence—or any of the evidence the ALJ cited—and Plaintiff's capacity to use her shoulders and right hand is not clear.

Accordingly, the Court concludes that the ALJ failed to comply with the treating physician rule with regard to this portion of Dr. Allen's opinion, in particular, by failing to explain the basis of the weight he afforded Dr. Allen's opinion on the limitations at issue. Therefore, remand is warranted, even though the ALJ's denial of benefits may be justified by other evidence in the record. *See Miller v. Comm'r of Soc. Sec.*, 811 F.3d 825, 833 (6th Cir. 2016).

### B.    Gopal Bedi, M.D.

Plaintiff contends that the ALJ should have given controlling weight to the opinions of her treating psychiatrist, Dr. Bedi, and failed to apply the factors set forth in 20 C.F.R. §§ 404.1527(c) and 416.927(c) in weighing his opinions. Dr. Bedi, who had treated Plaintiff since August 2014, provided six medical source statements ranging in date from November 2014 to December 2018. Three of these were mental residual functional capacity forms, dated November 3, 2014 (PageID.455–57), August 4, 2014 (PageID.470–71), and December 9, 2018 (PageID.1180–82). Two of the statements were transcribed sworn oral statements taken by Plaintiff's attorney on January 7, 2015 (PageID.460–62), and April 18, 2017 (PageID.1069–71). The final statement was letter dated October 17, 2016. (PageID.613.) The ALJ noted that the November 3, 2014 statement (as well as the January 7, 2015 oral statement) pertained to the previously-adjudicated period ending March 24, 2015, and the October 17, 2016 letter did not

11

assess the degree of Plaintiff's limitations, but merely said that Plaintiff was "currently unable to work." (PageID.76.)

In the three mental residual functional capacity questionnaires, Dr. Bedi opined that Plaintiff generally had marked limitations in maintaining social functioning/interacting with others and in maintaining concentration, persistence, or pace. He further opined that Plaintiff would be absent from work due to her impairments or treatment more than four days per month. (PageID.457, 471, 1181.) In his April 18, 2017 oral statement, Dr. Bedi said that Plaintiff's functional capacity had not significantly changed since his November 3, 2014 mental RFC, primarily due to her son's murder and the loss of her mother and nephew in the interim. (PageID.1069.) He further indicated that his observations in his records that Plaintiff was dressed appropriately, had good hygiene, and was alert and oriented times three during her appointments were not inconsistent with his work-preclusive limitations because they did not reflect her functional capacity. Dr. Bedi said that the treatment goal was to keep Plaintiff "in the community" through "a lot of other services including case management services," without which she would quickly decompensate and possibly become suicidal, requiring hospitalization. (PageID.1069–70.) On this point, Dr. Bedi said that they often had patients who presented well-dressed, composed, calm, and collected during an appointment but still would not be able to function in a work setting. (PageID.70.) Dr. Bedi also stated that, although he had reduced Plaintiff's dosage of Haldol in November 2016 because she was no longer experiencing psychosis symptoms, including hallucinations, she was still receiving a high level of medication. (PageID.1070–71.) Finally, he opined that Plaintiff could not meet the demands of any job. (PageID.1071.)

The ALJ explained her decision to give Dr. Bedi's opinions partial weight as follows:

> As noted above, the November 3, 2014, opinion is within the period that has already been adjudicated. Dr. Bedi is a specialist in psychiatry and has treated the claimant since prior to the amended alleged onset date. Dr. Bedi is familiar with the claimant's mental conditions and longitudinal response to treatment. However, not all of the limitations Dr. Bedi identified are consistent with the clinical findings documented in Kalamazoo Community Mental Health clinic notes or in other records. "The more a medical source presents relevant evidence to support a medical opinion, particularly medical signs and laboratory findings, the more weight we will give that medical opinion" (20 CFR 404.1527(d) and 416.927(d)). In the April 2015 statement, Dr. Bedi explained why progress notes reflect the claimant's ability to function in the community.[4] However, despite opining that the claimant had extreme limitations, Dr. Bedi maintained a conservative course of treatment. Consistent with what Dr. Bedi identified as a goal of treatment, the record does not document hospital or emergency care for mental health symptoms. On August 4, 2015, the date Dr. Bedi reported in a questionnaire checklist (Exhibit C4F) that the claimant had "marked" impairment in 13 of 20 areas, the doctor's contemporaneous treatment note reflects the claimant was "not voicing any complaint." The objective findings were, "She did not appear in any physical or emotional distress. She was polite and friendly" (Exhibit C6F 9). Dr. Bedi's opinion that the claimant was able to live independently in the community and that her psychotropic medications were effective (Exhibit C6F 14) does not support extreme or marked limitation of mental functioning. The treatment records document that the claimant consistently presented with intact cognitive function (Exhibit C6F 14, 9; C9F 14, 31, 37, 47). Clinical findings reported by other sources do not support marked or extreme limitations prior to September 1, 2015 or since March 7, 2017. On October 18, 2016, the only symptom noted was mild anxiety (Exhibit Cl IF 81-107). At an examination by Jeffrey King, M.D., in December 2017, the claimant was "alert and oriented, cooperative with examination and in no acute distress" (Exhibit C35F 2). In June 2018 and July 2018, Dr. Clarke reported that the claimant appeared anxious, but had normal behavior, judgment, thought content, cognition, and memory (Exhibit C32F/23).

(PageID.76–77.)

Among the reasons the ALJ cited for discounting Dr. Bedi's opinion was that Plaintiff's treatment was conservative, and she had no psychiatric hospitalizations or emergency care. These are generally valid considerations in determining the weight to afford a treating physician's opinion. *See Francis v. Comm'r Soc. Sec. Admin.*, 414 F. App'x 802, 806 (6th Cir. 2011) (concluding that the ALJ properly discounted the treating physician's opinion based on the plaintiff's conservative treatment"); *Leppien v. Comm'r of Soc. Sec.*, No. 1:15-CV-722, 2016

---

[4] The ALJ erroneously referred to Dr. Bedi's April 2017 statement as his April 2015 statement.

13

WL 3661851, at *5 (W.D. Mich. July 11, 2016) ("The Sixth Circuit has found that conservative treatment may constitute a 'good reason' for discounting a treating physician's opinion."); *Ampy v. Comm'r of Soc. Sec.*, No. 2:14-cv-13547, 2016 WL 1128671 at *11 (E.D. Mich. Jan. 14, 2016) (noting that "the ALJ may consider hospitalizations, or a lack thereof, in forming his or her disability determination") (citing *Monateri v. Comm'r of Soc. Sec.*, 436 F. App'x 434, 445 (6th Cir. 2011)). In this case, however, Dr. Bedi explained that the treatment goal was to keep Plaintiff in the community and out of the hospital by providing her with various services, including case management, and maintaining her on a high level of medication. The fact that this goal was met is not necessarily inconsistent with an inability to engage in competitive, full-time work, particularly because the level of services Plaintiff was receiving suggests a low level of functioning. Moreover, as Plaintiff notes, there is no evidence in the record that she was engaging in activities that were inconsistent with Dr. Bedi's findings.

The ALJ further noted that Dr. Bedi's opinions in the August 4, 2015 mental RFC form were at odds with his treatment note of the same date, which indicated that Plaintiff was "not voicing any complaint," and found that Plaintiff did not "appear in any physical or emotional distress," and was "polite and friendly." (PageID.77, 518.) The ALJ also pointed out that evidence from other providers indicated that Plaintiff presented as "alert and oriented, cooperative . . . and in no acute distress," in December 2017 (PageID.77, 1195), and appeared anxious but exhibited normal speech, behavior, judgment, and thought content in June and July 2018. (PageID.77, 1155, 1163.) "An inconsistency with treatment notes and other evidence in the medical record are among the reasons that can independently justify an ALJ's decision to give less-than-controlling weight to a treating physician's opinion." *Moses v. Comm'r of Soc. Sec.*, No. 1:19-cv-1960, 2020 WL 3453129, at *10 (N.D. Ohio May 29, 2020), *report and*

14

*recommendation adopted*, 2020 WL 3447831 (N.D. Ohio June 24, 2020); *see also Goldman v. Comm'r of Soc. Sec.*, No. 1:08-cv-664, 2009 WL 3242569, at *9–10 (W.D. Mich. Sept. 30, 2009) (the ALJ's decision to give less than controlling weight to the treating source's opinions was proper because they were "inconsistent with the objective medical evidence as well as [the doctor's] own treatment notes"). Again, however, Dr. Bedi explained that normal mental status findings were not necessarily indicative of Plaintiff's ability to function in the workplace. (PageID.1069–70.) To Dr. Bedi's point, Plaintiff's cognitive functioning was often observed to be intact during her period of disability, when the ALJ found that she would have been off task more than 20 percent of a typical workday due to her impairments. (PageID.631, 636, 1062, 1192.)

Accordingly, although there may be reasons to discount Dr. Bedi's opinions, remand is warranted for the ALJ to consider Dr. Bedi's explanations in the first instance.

## II.     The RFC Determination

Plaintiff argues that the ALJ's RFC determination was not supported by substantial evidence because it fails to include limitations pertaining to Plaintiff's mental impairments and limitations relating the use of her right hand for grasping, reaching, pushing, or pulling. Because the Court is remanding the matter for further consideration of the opinion evidence discussed above, the ALJ should address these issues on remand. However, Plaintiff's argument regarding her mental limitations merits some discussion.

The ALJ determined that "until September 2015, the medical evidence of record does not document a significant change in clinically documented objective findings" such that Plaintiff's impairments and functioning were different in degree from the previously-adjudicated period. (PageID.72.) This finding is supported by substantial evidence. (PageID.74, 593, 626, 776.) Plaintiff contends, however, that the ALJ did not identify evidence documenting medical

15

improvement in her ability to concentrate as of March 7, 2017, and that Dr. Bedi's treatment notes show that her grief symptoms persisted well after that date. (ECF No. 17 at PageID.1516, 1518.) The Commissioner responds that the ALJ cited evidence of improvement as early as the fall of 2016. (ECF No. 21 at PageID.1539.) The ALJ did indeed cite evidence of improvement (PageID.74–75), but she pegged the end of Plaintiff's disability to a March 7, 2017 treatment note stating that Plaintiff "does recognize the fact that she is currently going through a normal grief reaction, which was expected." (PageID.70, 1054.) The situation discussed during this session was the loss of Plaintiff's nephew. The prior month, when Plaintiff reported the unexpected loss of her mother, Dr. Bedi wrote that Plaintiff "recognizes the fact that she is currently going through the expected process of grieving." (PageID.1058.) It is significant, however, that the ALJ's disability finding was based on prolonged grief reaction due to "the tragic loss of her son in late August 2015." (PageID.64.) Neither of these treatment notes regarding other losses suggests that Plaintiff's grief response to her son's death had normalized as of March 7, 2017, such that her ability to concentrate had improved. In fact, Dr. Bedi noted as late as November 2017 that Plaintiff "remain[ed] sad and depressed on account of the loss of her son 2 years ago." (PageID.1108.) The ALJ's conclusion that Plaintiff's period of disability ended on March 7, 2017, assumes the same degree of grief to all family-related deaths, which the evidence in the record shows was not the case. The ALJ's finding that Plaintiff experienced medical improvement as March 7, 2017, is thus not supported by substantial evidence. Accordingly, on remand, the ALJ should revisit the issue of medical improvement and its effect on Plaintiff's RFC.

## CONCLUSION

For the reasons stated above, the Commissioner's decision is **vacated and the matter remanded for further factual findings pursuant to sentence four of 42 U.S.C. § 405(g)**.

An order consistent with this opinion will enter.

Dated: September 30, 2021 /s/ Sally J. Berens
SALLY J. BERENS
U.S. Magistrate Judge